UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

ADOLFO DIAZ,

Defendant.

No. 16-cr-719 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Defendant Adolfo Diaz moves for a reduction in his sentence pursuant to the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), and for the assignment of counsel to assist with his section 3582(c)(1)(A) motion. (Doc. No. 293.) Although it appears that Diaz has exhausted the administrative remedies available through the Bureau of Prisons (the "BOP"), the Court finds that a sentencing reduction is not warranted in light of the factors set forth in 18 U.S.C. § 3553(a). Accordingly, Diaz's motion is DENIED.

In September 2016, Diaz and four others conspired to commit an armed robbery of a Bronx drug dealer whom they believed to be in possession of two kilograms of cocaine. (Doc. No. 236 ("PSR") ¶¶ 14–34.) Diaz, who was affiliated with a Yonkers-based gang engaged in drug dealing and gun possession, recruited one of his drug suppliers, Ronny Lopez, to provide a vehicle for the armed robbery. (*Id.* ¶¶ 19–20.) According to the plan, Diaz would serve as a lookout and provide protection, if needed, to the other coconspirators while they carried out the robbery. (*Id.* ¶ 23.) With the help of an informant, law enforcement officers arrested Diaz and his coconspirators in a Target parking lot on September 28, 2016, as they prepared to initiate the armed robbery. (*Id.* ¶¶ 27–28.) At the time of his arrest, Diaz was on bail for an unrelated armed robbery. (*Id.* ¶ 19.)

On April 27, 2017, Diaz pleaded guilty pursuant to a plea agreement with the government to one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and one count of using, carrying, and possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(2).  (Doc. No. 18 at 1, 3.)  At the sentencing proceeding on January 11, 2019, the Court calculated the Guidelines range for the conspiracy count to be 137 to 156 months' imprisonment, based on an offense level of 19 and a criminal history category of VI, which resulted from Diaz's eleven prior convictions.  (Doc. No. 222 ("Sent. Tr.") at 16, 30.)  The Court also concluded that the firearms count carried a mandatory minimum sentence of five years' imprisonment, to be served consecutive to the sentence imposed on the conspiracy count.  (Sent. Tr. at 12–13.)  The Court nonetheless imposed a below-Guidelines sentence of 120 months' imprisonment on the conspiracy count, to be followed by five years' imprisonment on the firearms count.  (Doc. No. 225 at 2, 6.)  In explaining its decision to impose a below-Guidelines sentence, the Court cited Diaz's youth and serious mental health issues.  (Sent. Tr. at 63.)  The Court also emphasized, however, the "troubling" and "dangerous" nature of the underlying offense – a "crime to rob, in broad daylight, drug dealers at gunpoint in a crowded area of New York City whe[re] people could have gotten killed or injured" (*id.* at 61, 63) – as well as Diaz's lengthy criminal history and "the need to deter or discourage Mr. Diaz . . . from committing crimes like this in the future" (*id.* at 32).  Diaz is currently serving his sentence and is expected to be released on April 6, 2025.  (Doc. No. 296 ("Gov't Opp'n") at 3.)

The Court "may not modify a term of imprisonment once it has been imposed except pursuant to statute."  *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020).  In the First Step Act of 2018, Congress authorized courts to grant, in their discretion, a sentence reduction to a defendant who has made a showing of "extraordinary and compelling reasons" that warrant

such a reduction, after the court has "consider[ed] the factors set forth in [18 U.S.C.] section 3553(a)." Where, as here, the motion is brought by the defendant, as opposed to the BOP on a defendant's behalf, a district court can consider any factor it deems relevant. *See United States v. Brooker*, 976 F3d 228, 237 (2d Cir. 2020). The Second Circuit has explained that to be eligible for a sentence reduction, a defendant must *both* "satisf[y] . . . the [section] 3553(a) factors" and make a showing of "extraordinary and compelling reasons" supporting a reduction. *United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021). In other words, "if a district court determines that one of those conditions is lacking, it need not address the remaining one[]." *Id.* (citation omitted).

In his motion for compassionate release, Diaz asserts that extraordinary and compelling reasons warrant his release under 18 U.S.C. § 3582(c)(1)(A)(i). First, he details his extensive participation in rehabilitative and educational programs offered by the BOP. (Doc. No. 293 at 3–7.) Second, he claims that he has ongoing breathing issues as a result of a 2013 stabbing and subsequent improper treatment that significantly increase his odds of becoming seriously ill from COVID-19. (*Id.* at 7–10.) Third, Diaz argues that the especially harsh conditions of his incarceration brought on by the pandemic – which could not have been foreseen by the Court when it imposed sentence – further justify compassionate release. (*Id.* at 10–11.)

But while the Court acknowledges the hardships resulting from Diaz's health condition and the pandemic, and applauds Diaz for the many positive steps he has taken in the years since he was sentenced – including his obtaining his GED, his completion of numerous programs offered by the BOP, his participation in group therapy, and his consistent work history while in custody – the Court remains convinced that a total sentence of 180 months' imprisonment is appropriate in light of the section 3553(a) factors discussed at sentencing.

Under 18 U.S.C. § 3553(a), a court imposing a sentence must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and ensure that the sentence "reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, . . . provide[s] just punishment for the offense," "afford[s] adequate deterrence to criminal conduct," "protect[s] the public from further crimes of the defendant," and "provide[s] the defendant with needed educational or vocational training, medical care," among other sentencing objectives, *id.* § 3553(a)(2)(A)–(D). A court must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(6).

The gravity of Diaz's crime and criminal history illustrates why the section 3553(a) factors counsel against his release. As the Court observed at sentencing, Diaz played an active role in a conspiracy to commit armed robbery, in broad daylight, at a location where innocent bystanders could have been harmed or killed. (*See* Sent. Tr. at 61, 63.) His conduct was not momentary or fleeting but rather part of a dangerous and worrisome "pattern of violence." (*Id.* at 38–39.) Indeed, the Court noted that Diaz committed this offense while on bail for an unrelated armed robbery (PSR ¶ 14), showing a deeply troubling lack of respect for the law. Diaz's extensive criminal history also raises serious concerns about his risk of recidivism and underscores the continuing need to "protect the public from further crimes" he might commit. 18 U.S.C. § 3553(a)(2)(C).

The Court is also cognizant of its duty to ensure that the sentence "provide[s] [a] just punishment for the offense" and "avoid[s] unwarranted sentence disparities." *Id.* § 3553(a)(2)(A), (a)(6). Here, Diaz has already been the beneficiary of a below-Guidelines sentence. Further reducing his sentence would, in the Court's view, be inconsistent with the goal of providing a just punishment for such serious conduct. *See United States v. McLean*, Nos. 08-cr-789-7 (RJS),

12-cv-1954 (RJS), 2022 WL 1125946, at *6 (S.D.N.Y. Apr. 15, 2022) (explaining that "[a] further reduction now" of an already below-Guidelines sentence would serve to "undermine [the sentence's] deterrent effect and fail to adequately reflect the seriousness of the offense and promote respect for the law" (citation and quotation marks omitted)). Moreover, Diaz's coconspirator Ronny Lopez, whom the Court regarded as comparable in culpability to Diaz, also received a sentence of 120 months' imprisonment on the robbery conspiracy. (Sent. Tr. at 55, 64.) Granting Diaz's motion would therefore lead to an unwarranted sentence disparity among similarly situated defendants.

Finally, the medical conditions that Diaz identifies do not alter the Court's analysis. Though often considered as part of the extraordinary-circumstances inquiry, health conditions are also relevant to the section 3553(a) analysis because a court must ensure that a sentence "provide[s] the defendant with needed educational or vocational training, [and] medical care." 18 U.S.C. § 3553(a)(2)(D). Here, Diaz suffered a stab wound in 2013, which he argues has impaired his breathing capacity and left him more vulnerable to complications were he to contract COVID-19. But Diaz has not indicated any specific diagnosis pertaining to his breathing difficulties, and the Certified Medical Assistant ("CMA") at USP Allenwood, where Diaz is incarcerated, noted that his breathing issues are "not an everyday occurrence." (Doc. No. 293 at 7.) Moreover, in light of Diaz's regular treatment while incarcerated, it appears that he has access to adequate medical services at USP Allenwood.[1] *See United States v. Israilov*, No. 17-cr-262 (LGS), 2021 WL 861418, at *2 (S.D.N.Y. Mar. 8, 2021) ("Compassionate release is also not warranted because the BOP medical records reflect that Defendant's [condition] was monitored and treated."). The record further reflects that Diaz has received two doses of the Moderna vaccine and also contracted

---

[1] Diaz's motion for compassionate release mentions three separate visits to USP Allenwood's CMA: August 24, 2021; August 31, 2021; and September 14, 2021. (Doc. No. 293 at 7–8.)

5

and recovered from COVID-19 (Doc. No. 293 at 9) – likely decreasing his risk of severe illness from COVID-19 in the future. *See United States v. Patel*, No. 21-1746, 2022 WL 1634454, at *2 (2d Cir. May 24, 2022) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an extraordinary and compelling reason for immediate release." (citation and quotation marks omitted)).

For all these reasons, the Court concludes that a further reduction of Diaz's already-below-Guidelines sentence is inconsistent with the section 3553(a) factors and therefore unwarranted. Accordingly, the Court respectfully DENIES Diaz's compassionate release motion.[2]

Finally, although Diaz requests that the Court assign him counsel to assist with his motion for a reduction of sentence (Doc. No. 293 at 3), the law is clear that Diaz has no right to counsel at this stage of his proceedings. A defendant's constitutional right to counsel "extends to the first appeal of right, and no further." *United States v. Fleming*, 5 F.4th 189, 193 (2d Cir. 2021) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)); *see also* Fed. R. Crim. P. 44(a). And while a defendant's right to counsel may extend to certain "ancillary matters," 18 U.S.C. § 3006A(c), such matters do not include "collateral attacks upon a judgment" like that afforded by 18 U.S.C. § 3582(c)(1). *Fleming*, 5 F.4th at 193 (quoting *United States v. Reddick*, 53 F.3d 462, 464 (2d Cir. 1995)).[3] Instead, "the appointment of CJA counsel at this [post-judgment] stage rests in the

---

[2] Following Diaz's conviction and sentencing, the Supreme Court and Second Circuit concluded that conspiracy to commit Hobbs Act robbery is not a "crime of violence" for purposes of section 924(c). *See United States v. Davis*, 139 S. Ct. 2319, 2336 (2019); *United States v. Barrett*, 937 F.3d 126, 127 (2d. Cir. 2019). Though Diaz does not seek compassionate release on this basis, the Court would be unmoved even if he had, given the severity of his conduct and his extensive criminal history at the time of the offense. *See United States v. Davis*, 139 S. Ct. 2319, 2336 (2019) ("[D]efendants whose § 924(c) convictions are overturned by virtue of today's ruling will not even necessarily receive lighter sentences: As this Court has noted, when a defendant's § 924(c) conviction is invalidated, courts of appeals 'routinely' vacate the defendant's entire sentence on all counts 'so that the district court may increase the sentences for any remaining counts' if such an increase is warranted." (quoting *Dean v. United States*, 137 S. Ct. 1170, 1176 (2017))).

[3] Indeed, every circuit to address the issue "has agreed that there is no constitutional (or statutory) right to appointed counsel in section 3582(c) proceedings." *Fleming*, 5 F.4th at 193 (quoting *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021)).

Court's sole discretion," *id.* at 194 (citing 18 U.S.C. § 3006A(a)(2), and such discretion turns, in large part, on the merits of a movant's claim, *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986) ("[C]ounsel is often unwarranted where the indigent's chances of success are extremely slim." (citation and quotation marks omitted)). In light of the Court's conclusion that the section 3553(a) factors weigh heavily against Diaz's compassionate release, the Court likewise DENIES Diaz's request for the assignment of counsel.

For the foregoing reasons, Diaz's motion for compassionate release and the appointment of counsel is DENIED. The Clerk of Court is respectfully directed to terminate the motion pending at Doc. No. 293, and to mail a copy of this Order to Diaz.

SO ORDERED.

Dated:   July 28, 2022
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation